IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARONKE LASILE,

     Plaintiff,

v.

SYNEOS HEALTH US, INC.,

     Defendant.

CIVIL ACTION FILE NO.

1:22-cv-2472-TWT-JKL

## NON-FINAL REPORT AND RECOMMENDATION

This employment discrimination case is presently before the Court on Defendant Syneos Health US, Inc.'s motion to dismiss Plaintiff Aronke Lasile's amended complaint. [Doc. 10.] For the reasons that follow, it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff filed this action on May 21, 2022, and served Defendant later that month. [Docs. 1, 3.] Defendant thereafter moved to dismiss Plaintiff's claims, but on August 1, 2022, Plaintiff amended as a matter of right, mooting the motion to dismiss. [Docs. 4, 7, 8, 9.]

According to her amended complaint, Plaintiff began her employment with Defendant on February 1, 2018, as a Clinical Research Assistant. [Doc. 7 ¶ 17.] She suffers from infertility, which is a chronic medical condition that limits her body's reproductive functions and requires treatment, including in vitro fertilization ("IVF") for a successful pregnancy. [*Id.* ¶¶ 17, 18, 48-49.]

Plaintiff alleges that in June 2021, following company policy, she spoke with her manager, Beverly Sparrow-Parker, about her infertility and informed her that she (Plaintiff) would be undergoing IVF treatment to become pregnant. [Doc. 7 ¶ 19.] Among other things, Plaintiff, who typically travelled 75-85% of the time, explained that she needed to travel less frequently to increase the likelihood of success with IVF treatment. [*Id.* ¶¶ 20-21, 24.] Following that conversation, on June 14, Plaintiff formally requested a two-month restriction on her travel as an accommodation; among other things, her doctor supported the request with a letter to Defendant stating that Plaintiff should not travel during that period and would likely need "frequent monitoring appointments, sometimes up to five times a week." [*Id.* ¶¶ 22-23.] Plaintiff's request was approved. [*Id.* ¶ 25.]

According to Plaintiff, her infertility required treatment by a medical professional at least twice a year. [Doc. 7 ¶ 29.] Following the approval of her

initial request, Plaintiff determined that she required more time off in order to undergo IVF treatment, and notified Defendant of her need for additional leave for her IVF treatments, asking that she be allowed to go on short-term disability. [*Id.* ¶ 26.] At this point, Defendant did not advise Plaintiff about her rights to FMLA leave for her IVF treatment or infertility, and instead decided to fire her. [*Id.* ¶¶ 26-28, 36.] To this end, Defendant "began fabricating issues with [the] receipts" she submitted to her manager, Marty Perry, for travel reimbursement. [*Id.* ¶¶ 29-31.] Although Plaintiff had properly submitted genuine receipts for reimbursement, Perry and Sparrow-Parker questioned their legitimacy, asked Plaintiff for screenshots, and ultimately informed Plaintiff that they viewed them as "unauthorized." [*Id.* ¶¶ 32-35.] Defendant then terminated Plaintiff's employment based upon the "unauthorized receipts," which she alleges was merely pretext for unlawful discrimination and/or retaliation. [*Id.* ¶¶ 34, 37.]

Plaintiff alleges that in firing her, Defendant not only violated its own progressive discipline policy, but also treated employees who were not disabled, not in need of FMLA leave, not female, and/or not undergoing treatment related to pregnancy more favorably. [Doc. 7 ¶¶ 38-46.] Based upon the foregoing, Plaintiff seeks to assert claims for disability discrimination and retaliation under the

American with Disabilities Act ("ADA"); gender and pregnancy discrimination under the Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act ("PDA"); and interference and retaliation under the Family Medical Leave Act ("FMLA"). [*Id.*, Counts I-VI.]

On August 8, 2022, Defendant filed the present motion to dismiss, arguing that all of her claims should be dismissed. [Doc. 10.] As to Plaintiff's ADA claims, Defendant argues that Plaintiff has not adequately alleged that she was disabled, that she was discriminated against because of her disability, or that she was retaliated against for engaging in protected activity. [Doc. 10-1 at 9-13.] Next, Defendant contends that Plaintiff's pregnancy discrimination claim should be dismissed because she failed to exhaust her administrative remedies, because the PDA does not protect individual with infertility, and because Plaintiff has not otherwise established a prima facie case of pregnancy discrimination. [*Id.* at 14-16.] Defendant then asserts that Plaintiff's Title VII gender discrimination claim fails because it is time barred and because her allegations fail to raise a plausible inference of discrimination. [*Id.* at 16-19.] Finally, Defendant argues that Plaintiff's allegations fail to demonstrate that she was entitled to FMLA benefits or engaged in protected activity, and as a result, her interference and retaliation claims

are subject to dismissal.  [*Id.* at 19-24.]

## II.  LEGAL ANALYSIS

### A.  Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While it need not provide "detailed factual allegations," a complaint must provide factual allegations sufficient to plausibly set forth a plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do."  *Id.* The court is not required to accept as true legal conclusions couched as factual statements, *Iqbal*, 556 U.S. at 678, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief," as required by Rule 8(a)(2).  *Id.* at 679 (internal quotation marks, bracket, and citation omitted). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or a claim is based

on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## B. Discrimination under the ADA

As discussed, Defendant argues that Plaintiff's disability claim fails to sufficiently allege either that she was "disabled" or that she was discriminated against because of an alleged disability.

### 1. Disability

In its first line of attack, Defendant contends that Plaintiff's discrimination claim under the ADA fails because her amended complaint "contains nothing more than conclusory allegations" that she was disabled. [Doc. 10-1 at 9-10.] There is no dispute that an ADA plaintiff must allege facts to plausibly support that she has a disability, as that term is defined by the ADA. This can be satisfied by showing either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Given Plaintiff's allegations and her response to the motion, it is clear that she seeks to prove her disability by establishing an actual physical impairment pursuant to

the first option set forth in the statute. As a result, she must plausibly allege she has (1) a physical impairment that (2) limits a major life activity to (3) a substantial degree. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *see also Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (holding that the existence of a physical impairment does not constitute a disability under the ADA unless the impairment substantially limits a major life activity). Whether a plaintiff has a disability is determined on a case-by-case basis. *Garrett v. Univ. Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1155 (11th Cir. 2005).

In this case, Plaintiff has alleged the following regarding her disability: she suffers from infertility, an impairment that limits her major life activity of reproduction; that despite her impairment, she had been able to perform her job; that, during the summer of 2021, her doctor initially certified that treatment for her infertility—namely, IVF—would require that she reduce her travel and attend frequent monitoring appointments (sometimes up to five times a week); that Defendant granted Plaintiff a travel restriction as an accommodation; that she thereafter realized that she would need additional leave to accommodate her IVF treatment; and that she sought short-term disability leave as a result.

Defendant relies on a single case decided at the pleading stage[1] to argue that these allegations do not plausibly suggest that her infertility substantially limits any major life activity, and that she is therefore not "disabled" under the statute. [Doc.

---

[1] The three other cases Defendant relies upon were decided at summary judgment and involved detailed factual analyses. *See Munoz v. Selig Enters., Inc.*, 981 F.3d 1265 (11th Cir. 2020); *Penaloza v. Target Corp.*, 549 F. App'x 844 (11th Cir. 2013); *Swain v. Hillsborough Cnty. Sch. Bd.*, 146 F.3d 855, 856 (11th Cir. 1998). But because an employment discrimination plaintiff need not allege facts specifically establishing every aspect of a prima facie case to survive a motion to dismiss, they are unhelpful to the present analysis. *See Facsina v. Isla Morada, Vill. of Islands*, No. 21-10092-CIV, 2022 WL 3928350, at *4 (S.D. Fla. Aug. 16, 2022) (collecting cases) ("Plaintiffs are not required to articulate detailed facts supporting the claim of disability as if a heightened pleading standard applied. Nor do they have to prove their case at the pleading stage of the proceedings."), *report and recommendation adopted*, 2022 WL 3910703 (S.D. Fla. Aug. 31, 2022); *see also Kim v. Friends Tek, LLC*, No. 1:20-CV-4276-AT-JSA, 2020 WL 11885523, at *5 (N.D. Ga. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 4839090 (N.D. Ga. Jan. 8, 2021); *Moore v. Perficient, Inc.*, No. 1:20-CV-2124-SDG-CMS, 2020 WL 11884718, at *2 (N.D. Ga. Sept. 17, 2020), *report and recommendation adopted*, 2020 WL 11884717 (N.D. Ga. Oct. 26, 2020).

The undersigned further notes that Defendant cites *Munoz* for the proposition that to state plausible claim, a "plaintiff must plead facts to show the timing, frequency, and duration of her impairments," beyond alleging "generalized categories" of impairment, such infertility. [Doc. 10-1 at 9 (citing *Munoz*, 981 F.3d at 1272) (emphasis in original); *see also* Doc. 15 at 2-3.] But that is not what the Eleventh Circuit said in *Munoz*. Instead, it held that, at summary judgment, a plaintiff must have "evidence" about the timing, frequency, and duration of a plaintiff's impairments in order to allow the Court to "assess whether [she] meet the definition of disabled under the ADA." *Munoz*, 981 F.3d at 1273. As such, it actually tells us nothing about what must be pled initially (as opposed to what must ultimately demonstrated with evidence). Defendant's presentation of the *Munoz* comes dangerously close to misrepresenting its holding.

10-1 at 9 (citing *Abel v. NYC, Human Res. Admin*, No. 10 C 295, 2011 WL 812309 (S.D.N.Y. Mar. 3, 2011). But that case, *Abel*, failed to even address the more recent changes wrought by the ADA Amendments Act ("ADAAA"). *See* 2011 WL 812309 at *1-*5. This is important to the disposition of the present case because the ADAAA was enacted specifically to make it easier for plaintiffs to prove they are disabled under the ADA. *See* 29 C.F.R. Part 1630, App. § 1630.2(g) (citing 154 Cong. Rec. 13,766 (2008) (Joint Statement of Reps. Hoyer and Sensenbrenner on the origins of the ADA Restoration Act of 2008, H.R. 3195) ("[T]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protections under the ADA.")). As a result, the ADA, as amended by the ADAAA, provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted . . . ." 42 U.S.C. § 12102(4)(A); *see also* 29 C.F.R. § 1630.1(c)(4). The implementing regulations,[2] meanwhile, explain that the "substantially limits" requirement should also be "construed broadly in favor of expansive coverage" and "is not meant to be

---

[2] The Eleventh Circuit has directed courts to look to the Equal Employment Opportunity Commission's ("EEOC") regulations for guidance on interpreting the term "substantially limits." *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007).

a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Indeed, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* at § 1630.2(j)(1)(ii). As with the overall question of disability, *see Garrett*, 507 F.3d at 1311, the "determination of whether an impairment substantially limits a major life activity requires an individualized assessment," 29 C.F.R. § 1630.2(j)(1) (iv). Accordingly, *Abel*, and Defendant's position relying upon it, is based on an overly onerous and outdated understanding of what is required to plead a disability under the ADA. Even if it were not, the plaintiff's failure in *Abel* was that she never identified any impairment caused by her uterine fibroids and never provided even a single "description of any 'major life activity' which is impeded by her illness." *Abel*, 2011 WL 812309, at *5. Because Plaintiff here has identified reproduction as the major life activity impaired by her infertility, even if *Abel* were still good law, it is inapplicable as a result.

Were this not enough, courts in this Circuit have regularly sustained ADA claims with similar allegations of disability[3] over defendants' motions to dismiss.

---

[3] The ADA and the Supreme Court both recognize that reproduction and childbearing is a "major life activity" for purposes of establishing a disability under the ADA. *See Bragdon*, 524 U.S. at 639; *see also* 42 U.S.C. § 12102(2) ("[A]

10

In *Hyppolite-Marriott v. Florida Department of Veterans Affairs*, for instance, the court found that the plaintiff had "adequately alleged a disability by alleging that she was having a high-risk pregnancy that placed 'limitations on her ability to walk, thereby limiting a major life activity.'" *See* No. 0:21-CV-60352-RS, 2021 WL 5529871, at *5 (S.D. Fla. Nov. 2, 2021). Similarly, in *Stephens v. Adler Social, LLC*, the court held that allegations that the plaintiff was pregnant, was experiencing COVID-19-like symptoms, and sought to work from home during her illness was sufficient to allege disability initially. *See* No. 20-62242-CIV, 2021 WL 5084236, at *2-3 (S.D. Fla. Mar. 12, 2021).

---

major life activity also includes the operation of a major bodily function, including but not limited to . . . reproductive function."). Thus, while pregnancy itself is not a disability, a pregnancy-related impairment may be. 29 C.F.R. Part 1630, App. § 1630.2(h) ("Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments. However, a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition."); *see Mayorga v. Alorica, Inc.*, No. 12-cv-21578, 2012 WL 3043021, at *5 (S.D. Fla. July 25, 2012) ("[W]here a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of a disability."); *see also Willis v. Career Educ. Corp.*, No. 12 C 07662, 2015 WL 3859191, at *6 (N.D. Ill. June 19, 2015) ("Infertility, or sterility, assuredly is a disability under the ADA.") (quoting *Yindee v. CCH Inc.*, 458 F.3d 599 (7th Cir. 2006)).

11

The Court finds Plaintiff's allegations in this case comparable to those in *Hyppolite-Marriott* and *Stephens*, and concludes that they are sufficient to establish that Plaintiff is disabled under the ADA for pleading purposes. Plaintiff has alleged that she has infertility; that it substantially impacts her reproductive capacities; and that her specific infertility and IVF treatment required that she not travel and, ultimately, take a leave of absence, which also plausibly suggests that she was substantially limited in her ability to work. Whether or not Plaintiff can ultimately prove that her infertility rises to the level of a disability under the ADA is not at issue here, as a motion to dismiss is not the proper method for evaluating the merits of Plaintiff's specific factual assertions regarding her condition or its impact on her activities. At this early stage of the proceedings, the court is unwilling to say that Plaintiff has failed to sufficiently allege that she had a disability. Given the low bar for surviving motions to dismiss under the ADAAA, Congress's intent that the term "substantially limits" be broadly interpreted, and the foregoing case law establishing that similar allegations are sufficient, the undersigned finds that the amended complaint plausibly satisfies the requirements for alleging disability.

## 2. Causation

In its other argument regarding Plaintiff's disability claim, Defendant contends that Plaintiff's allegations fail to show that it "discriminated against her based upon her alleged disability," since they demonstrate that Defendant actually accommodated her request for a travel restriction. [Doc. 10-1 at 11-12; *see also* Doc. 15 at 3-4.] Defendant argues that because her charge of discrimination with the EEOC admits that she was allowed to work from home and was "able to perform the essential elements of her job without traveling," she was fully accommodated, and that nothing else in the amended complaint—including temporal proximity—allows for an inference that her discharge was connected to her disability. [*Id.*] For this argument, Defendant cites only a single case, and fails to identify a single supporting case that was decided on the pleadings.[4] It also

_____

[4] Defendant cites two cases for authority on considering an EEOC charge at the motion to dismiss stage, but neither of those cases addresses the requirements for pleading a claim of disability discrimination. [*See* Doc. 10-1 at 9 (citing *Gresham v. DaVita Healthcare Partners, Inc.*, 2020 WL 1492173 at *3 (S.D. Ga. March 23, 2020) and *Williams v. Davis Transfer Co.*, No. 3:12-cv-31 (CDL), 2012 WL 4049432, at *1-2 (M.D. Ga. Sept. 13, 2012).] The only case it cites regarding discrimination, *Barber v. Cellco Partnership*, was decided upon summary judgment, and pertains to outlandish notions of causation that are not applicable to the present dispute. *See* 808 F. App'x 929 (rejecting plaintiff's argument that, for purposes of demonstrating the causation element of a prima facie case at summary judgment through temporal proximity, any adverse action that occurs while a

curiously ignores that Plaintiff also allegedly requested short-term disability leave as a further accommodation of her disability, or that Defendant allegedly discharged her about month after learning about her disability and her request for accommodation, which is normally enough to establish causation. *See Godbee v. Sam's W., Inc.*, No. 21-60513-CIV, 2022 WL 2804843, at *5 (S.D. Fla. Feb. 17, 2022) (holding that allegations that plaintiff's job "was no longer available after Plaintiff informed Defendant of her medical condition and need for light duty status upon her return to work" would support an inference of discrimination); *see also Garcia v. City of Grantville, Ga.*, No. 3:17-CV-169-TCB-RGV, 2018 WL 11331793, at *18 n.23 (N.D. Ga. Nov. 13, 2018) (finding, upon motion to dismiss, that causation was sufficiently alleged where adverse action occurred about two months later), *report and recommendation adopted*, 2019 WL 12420818 (N.D. Ga. Jan. 16, 2019) (citing *Robinson v. LaFarge N. Am., Inc.*, 240 F. App'x 824, 829 (11th Cir. 2007)); *Sessom v. WellStar Hosp.*, No. 1:08-CV-2057-TWT-LTW, 2010 WL 11493776, at *16 (N.D. Ga. Feb. 10, 2010)).

---

plaintiff is presently suffering a disability will establish causation; but specifically acknowledging that the temporal proximity between when an employer finds out about the disability and when it takes an adverse action is in fact relevant for purposes of establishing causation).

Regardless, even assuming Plaintiff was initially accommodated with the travel restriction, the undersigned finds that the Eleventh Circuit's recent decision in *Jones v. Georgia Dep't of Community Health* forecloses Defendant's argument that Plaintiff cannot establish causation as to her other request or her discharge. *See* 2022 WL 4462036 at *2. In *Jones*, the plaintiff alleged that soon after she was approved for eleven weeks of FMLA, she "received her official notice of her termination," which "informed that her termination was due to a previously terminated subordinate performing duties outside her job description," despite never having been made aware of the subordinate's actions. *See* No. 1:20-cv-03225-CAP, Doc. Entry 16-1 ¶¶ 21-23 (N.D. Ga.). The only further allegation the *Jones* plaintiff made about the reasons for her discharge were that "[t]he circumstances surrounding Plaintiff's termination raise a reasonable inference that it was motivated by her disability." *Id.* ¶¶ 35. Despite the apparent lack of detailed factual support in her pleading and the trial court's finding that "plaintiff made no allegation about what motivated her termination and even alleged that the defendant provided a reason unrelated to her disability," *see Jones v. Georgia Dep't of Cmty. Health*, No. 1:20-CV-3225-CAP-CMS, 2021 WL 2593637, at *5 (N.D. Ga. June 21, 2021), the Eleventh Circuit reversed, stating that her "factual

allegations, taken as a whole and construed in her favor, are sufficient to satisfy [the] standard at the motion-to-dismiss stage," *Jones*, 2022 WL 4462036, at *2.[5]

Like the *Jones* plaintiff, Plaintiff has alleged that she was discharged soon after disclosing her disability and requesting an accommodation; that while her initial request was approved, her request for additional leave was not; that Defendant fabricated issues with her reimbursements as a pretext to fire her; that no other non-disabled employees were terminated; that Defendant's actions violated its progressive discipline policy; and that Defendant terminated Plaintiff "because of her disability." [Doc. 7 ¶¶ 26, 28, 31, 35, 38, 55.] In other words, Defendant appears to have been satisfied with Plaintiff and her job performance until she disclosed her disability and requested accommodations, but appears to have changed its mind soon after. Since Plaintiff alleges that the reimbursement issues were pretextual, it is unclear what basis Defendant had to discharge her except for either her alleged disability or her need for an accommodation. Based upon the Eleventh Circuit's holding in *Jones*, and keeping in mind that the Court

---

[5] The Eleventh Circuit acknowledged that the ADA and Rehab Act may have different causation standards based upon the statutory text, but explicitly declined to resolve whether a practical difference resulted or what any difference might entail. *Jones*, 2022 WL 4462036, at *3.

must take all reasonable inferences in favor of Plaintiff at this stage of the proceedings, that is enough.

Accordingly, because Defendant's arguments regarding Plaintiff's disability discrimination claim are without merit, its motion to dismiss the claim should be **DENIED**.

### C. Retaliation under the ADA

In its last argument regarding Plaintiff's ADA claims, Defendant contends that Plaintiff cannot make out a claim for retaliation because, as before, it allowed her to work from home, thereby accommodating her. [Doc. 10-1 at 12-13; Doc. 15 at 4-6.][6] But as just discussed, Plaintiff suffered at least one adverse actions after she was provided with a travel restriction—namely, her discharge—which she has sufficiently connected to her request for additional leave via temporal proximity, and has supported those facts with additional allegations that the problems identified with her reimbursement requests were pretextual.[7] *See Jones*, 2022 WL

---

[6] Defendant also argues that Plaintiff cannot establish a retaliation claim because she has not sufficiently alleged that she was "disabled" under the law. [Doc. 10-1 at 12.] For the reasons already explained, Plaintiff has adequately alleged that she is disabled.

[7] Defendant elsewhere asserts, "[f]or greater context," that the investigation into Plaintiff's receipts began as early as March 2021 [Doc. 10-1 at 3]; however, that allegation is not made in the amended complaint, and Defendant has not

4462036, at *2; *Godbee*, 2022 WL 2804843, at *5 (finding similar allegations of causation sufficient); *Garcia*, 2018 WL 11331793, at *18 n.23 (same); *see also Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (request for leave, even under other statutes, amounts to a request for an accommodation and is therefore protected activity).[8]  As a result, Plaintiff has sufficiently alleged that she engaged in protected activity and was retaliated soon after in response.  *Brooks*, 2020 WL 10070269, at *1, 3 (holding that seeking short-term disability leave for heart surgery and recovery was also a request for a reasonable accommodation "as contemplated by the ADA"); *see also Norman v. Southern Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1326 (M.D. Ala. Mar. 14, 2002) (finding that requesting a reasonable accommodation before and after FMLA-approved absence is protected activity, as is applying for, and using, medical leave).  Because Plaintiff has sufficiently alleged that she engaged in protected activity and tied that to her discharge, and Defendant's motion should be **DENIED** as to her ADA retaliation claim.

---

supported its assertion in any way that would enable to the Court to consider it at this time.

[8] A request for medical leave can qualify as a reasonable accommodation, provided it is not of an indefinite length.  *See Wood*, 323 F.3d at 1314.

## D. Discrimination under the PDA and Title VII

Before turning to Defendant's specific arguments for the dismissal of Plaintiff's pregnancy- and gender-related discrimination claims, the undersigned finds it appropriate to address an underlying issue that appears to have caused some confusion in the parties' briefing.

The PDA amended Title VII to clarify that discrimination based on "sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *Penaloza*, 549 F. App'x at 846 (citing *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994)).[9] It therefore requires that "women affected by pregnancy, childbirth, or related medical conditions . . . be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k). Based on the foregoing, pregnancy-related discrimination claims under Title VII are simply a subspecies of sex discrimination and use the same analysis as other Title VII sex discrimination claims. *Penaloza*, 549 F. App'x at 846; *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000). What

---

[9] Congress passed the PDA to reverse the Supreme Court's holding in *General Electric Company v. Gilbert*, 429 U.S. 125, 136 (1976), that an otherwise comprehensive disability insurance plan did not violate Title VII when it failed to cover pregnancy-related disabilities.

this all means for cases like the present one, where the facts undergirding a plaintiff's pregnancy- and gender-related discrimination claims are the same,[10] the two claims are redundant under Title VII. *See Monsrud v. Regnerative Orthopaedics & Spine Inst., P.C.*, No. 1:20-CV-1571-AT-WEJ, 2020 WL 12654451, at *2 n.1 (N.D. Ga. Sept. 9, 2020) (addressing "redundant" pregnancy- and sex-based Title VII claims together), *report and recommendation adopted*, 2020 WL 12654449 (N.D. Ga. Sept. 29, 2020)*; see also Johnson v. Gold Nugget, Inc.*, No. 5:11-CV-407-RS/CJK, 2012 WL 2609432, at *2 (N.D. Fla. July 5, 2012) ("Because pregnancy discrimination as defined in the [PDA] is a ground for showing a violation of Title VII, count four of the complaint, which alleges a separate violation of the [PDA], is redundant and is dismissed."); *Booher v. Turtle Cove Marina Condo. Ass'n, Inc.*, No. 8:14-CV-3158-T-36EAJ, 2015 WL 4751578, at *1 n.4 (M.D. Fla. Aug. 11, 2015) (court elected to refer to alleged claims under both Title VII and the PDA, as "the Title VII claim" because the PDA simply

---

[10] Although Plaintiff's claims are couched in different language—"pregnancy" versus "gender"—she does not point to, and the Court has not identified, to any additional factual allegation to suggest that Defendant discriminated against her for any reason other than her infertility, need for IVF treatment, and the attendant complications. [*Compare* Doc. 7, Count III, *with id.*, Count IV.]

amended Title VII to include pregnancy as a protected class). As in *Monsrud* and *Booher*, the undersigned will, as appropriate, simply refer to Plaintiff's nominally titled pregnancy- and gender-related discrimination claims as part of a single overall Title VII sex discrimination claim.

Turning, then, to Defendant's particular arguments for dismissal, it contends that Plaintiff's Title VII sex discrimination claim fails because she did not exhaust her administrative remedies as to the pregnancy piece; because she cannot established a prima facie case of pregnancy-related discrimination for purposes of Count III because infertility is not protected by the PDA and Title VII; because the gender-related portion of her Title VII discrimination claim in Count IV is time barred; and because her allegations fail to raise a plausible inference of gender-based discrimination. [*Id.* at 14-19.] The Court addresses each contention below.

### 1. Administrative Exhaustion

The failure to file a timely charge asserting a claim of pregnancy-based sex discrimination with the EEOC can bar those claims from being asserted in a judicial forum. *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1332 (11th Cir. 2000). Here,

relying on Second Circuit authority,[11] Defendant argues that because Plaintiff's EEOC charge[12] only mentions "infertility," she did not properly assert or exhaust a claim for pregnancy-based discrimination with the EEOC. [Doc. 10-1 at 13-14 (citing *Saks v. Franklin Covey Co.*, 316 F.3d 337, 346 (2nd Cir. 2003); *see also* Doc. 17 at 7-8 (citing *Saks* again).] In *Saks*, the Second Circuit decided that as a general matter, "infertility is a medical condition that afflicts men and women with equal frequency"; and reasoned that "[i]ncluding infertility within the PDA's protection as a 'related medical condition'" is therefore "incompatible with the PDA's purpose of clarifying the definition of 'because of sex.'" *Id.*; *see also id.* at

---

[11] The parties have not identified, and the undersigned has not found, Eleventh Circuit authority squarely addressing the relevant aspects of this question.

[12] "As a general rule, a district court must 'limit[] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss" or a motion for judgment on the pleadings. *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks omitted)). Documentation may be considered on a motion to dismiss without converting it to one for summary judgment, however, if it is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "In this context, "undisputed" means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). An EEOC charge or intake questionnaire attached to a complaint, for example, as Plaintiff's was, may be considered. *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013), *recons. denied*, No. 3:13-CV-112-TCB, 2014 WL 1711796 (N.D. Ga. May 1, 2014).

345 ("Because reproductive capacity is common to both men and women, we do not read the PDA as introducing a completely new classification of prohibited discrimination based solely on reproductive capacity."). Plaintiff, in response to Defendant's argument, contends that because her EEOC charge discusses her infertility and specifically identifies a sex-based claim of discrimination under Title VII,[13] it sufficiently invokes pregnancy discrimination, which is just another form of sex discrimination under Title VII. [Doc. 14 at 12-13.] On reply, Defendant reiterates its previous arguments, and contends that the charge's references to infertility and sex discrimination under Title VII were insufficient to put it on notice that Plaintiff sought to assert an actionable claim of pregnancy discrimination.

Unfortunately for Defendant, *Saks*'s reasoning does not carry the day, for two related reasons. First, because *Saks* did not take up the question of administrative exhaustion, it therefore has nothing to say about whether Plaintiff's particular charge of discrimination's is sufficient to exhaust a claim for pregnancy-related sex discrimination under Title VII. *See* 316 F.3d at 344-46. Second, and more substantially, *Saks*'s discussion of what the Second Circuit believes falls

---

[13] Plaintiff checked a box in the EEOC charge to indicate that she was raising a claim of sex discrimination. [*See* Doc. 7, Ex. A.]

under the scope of Title VII's sex discrimination prohibition is not appliable to the present facts, because the court in *Saks* "expressly decline[d] to consider" the question of "whether an infertile female employee would be able to state a claim under the PDA or Title VII for adverse employment action taken against her because she has taken numerous sick days in order to undergo surgical implantation procedures." 316 F.3d at 346 n.4. In other words, the *Saks* court specifically disclaimed resolving the issue Defendant cites it for.

As mentioned above, the PDA created no new rights or remedies, but merely clarified the scope of Title VII by recognizing that certain inherently gender-specific characteristics—specifically, those pertaining to pregnancy—are protected by Title VII's prohibition on sex discrimination. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 676-78 (1983). In other words, The PDA "made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Id.* at 684. In relation to this, *Saks* merely observed that "infertility," standing alone, was not inherently gender specific. 316 F.3d at 344-46. But that does not change the "simple test" for whether a pregnancy-related claim amounts to sex discrimination under Title VII: whether the employer treated an employee "in a manner which but for that

24

person's sex would be different." *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978); *see also Newport News*, 462 U.S. at 683-85*; cf. Bostock v. Clayton Cnty., Ga.*, ___ U.S. ___, 140 S. Ct. 1731, 1740 (2020).

In this case, Defendant is not accused of discriminating against Plaintiff solely because she was infertile [14]; instead, Plaintiff alleges that Defendant discharged her because she sought to undergo IVF treatment because of her infertility, specifically to become pregnant. [Doc. 7 ¶ 89 (alleging that Defendant discriminated against Plaintiff "because of her IVF treatments in order to become pregnant"); *see also id.* ¶¶ 22-23, 26.] This case is not about infertility as a general matter [15]; rather it involves female infertility, namely, IVF procedures that "necessarily . . . involve a surgical impregnation procedure," along with necessary follow-up and monitoring. *Hall v. Nalco Co.*, 534 F.3d 644, 649 (7th Cir. 2008) (citing The Merck Manual of Medical Information 1418-19, Mark H. Beers, MD, *et al.* eds. (2d home ed. 2003); Mayo Clinic Family Health Book 1069-70 (Scott C. Litin, MD, ed. (3d ed. 2003)); *see also Govori v. Goat Fifty, L.L.C.*, No. 10 CIV. 8982 DLC, 2011 WL 1197942, at *3 (S.D.N.Y. Mar. 30, 2011) ("[O]nly women

---

[14] And which would not amount to sex discrimination under *Saks*'s holding.

[15] *Saks* is further distinguishable because, unlike the situation presented here, it involved a dispute over the extension of insurance coverage. 316 F.3d at 344.

undergo surgical implantation procedures; therefore, only women and not men stand in potential danger of being fired for missing work for these procedures. An employer who fires his female employee for missing work for IVF treatment discriminates not on the basis of reproductive capacity or infertility alone, but on the basis of medical conditions related to pregnancy."); *cf. Int'l Union v. Johnson Controls,* 499 U.S. 187, 205 (1991) ("We conclude that the language of . . . the PDA . . . prohibit[s] an employer from discriminating against a woman because of her capacity to become pregnant[.]"). The undersigned finds the reasoning in *Hall* and its ilk persuasive, and concludes that, as a result, Plaintiff's allegations support that her condition and necessary IVF treatment were pregnancy-related, and do indeed invoke the Title VII's protections against sex discrimination.

This still leaves open the further question of whether Plaintiff's EEOC charge exhausted her pregnancy-related Title VII discrimination claim. Because *Saks* did not take up the question of exhaustion, it leaves Defendant's position—that Plaintiff's pregnancy-related Title VII discrimination claim is unexhausted—without authority in support. *See* 316 F.3d at 344-46. Plaintiff, meanwhile, contends that because her EEOC charge discussed issues with pregnancy generally by referencing her infertility and because she specifically checked the box for "sex

discrimination," she adequately exhausted the claim. [Doc. 14 at 12-13.] The Court finds Plaintiff's argument compelling.

While "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge," courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]" and should construe an EEOC complaint broadly. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Accordingly, discrimination claims are allowed if they are "like or related to, or grew out of, the allegations contained in [the] EEOC charge," or otherwise "amplify, clarify or more clearly focus" the allegations in the charge. *Id.* at 1279-80; *see also Ortiz v. Waste Mgmt., Inc. of Fla.*, 808 F. App'x 1010, 1014 (11th Cir. 2020).

In this case, Plaintiff checked a box on her EEOC charge indicating that she suffered from "discrimination based on . . . sex"; stated in the narrative portion that she requested a travel restriction in relation to treatment for infertility; further stated that Defendant fabricated issues with her reimbursement requests to create a pretext to fire her; and concluded by affirming that she was fired due to "discrimination based upon my gender." [Doc. 7, Ex A.] Because there are no other allegations

pertaining in any way to sex or gender in the charge, the only reasonable inference that would more "clearly focus" or "clarify" its assertions is that Plaintiff's claim pertains to pregnancy-related sex discrimination. Moreover, the Court has no doubt that a reasonable investigation by the EEOC would uncover that the treatment she received for her infertility was in fact IVF treatment as alleged in the amended complaint. And for the reasons explained immediately above, then, this is sufficient to invoke the protections of Title VII and exhaust that claim. *See Hall*, 534 F.3d at 649; *see also Van Oss v. Sterling Aviation, LLC*, No. 09-C-1069, 2010 WL 3943959, at *1 (E.D. Wis. Oct. 7, 2010) ("The charge indicated that [plaintiff] began experiencing discrimination and retaliation after his wife was docked pay because she needed time off to undergo fertility treatment."). Plaintiff has, therefore, exhausted her pregnancy-related Title VII discrimination claim.

## 2. Prima Facie Case

Separate from its exhaustion argument, Defendant also argues that Plaintiff cannot make out a prima facie case of pregnancy-related discrimination, primarily because—again—infertility is not protected by Title VII and the PDA. [Doc. 10-1 at 15-16.] In support, Plaintiff relies on *Saks* and two other cases. [*See id.* (citing *Saks*; *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 679 (8th Cir. 1996) and

*LaPorta v. Wal-Mart Stores, Inc.*, 163 F. Supp.2d 758, 770 (W.D. Mich. 2001)).]

But the Court has already taken up this assertion in relation to Defendant's exhaustion argument and found it lacking. For the reasons already explained, *Saks* specifically declined to address the issue Defendant cites it for, and the Court finds *Hall*'s reasoning and conclusion persuasive. And like *Saks*, *Krauel* addressed allegations of discrimination based upon infertility alone; the court there reasoned, as did the court in *Saks*, that infertility, on its own, is something "all individuals" could suffer from. *Krauel*, 95 F.3d at 678.[16] But just like *Saks*, the *Krauel* holdings fails to confront the specific facts laid out here, where a discrimination claim is based upon a woman's specific need for IVF treatment to become pregnant. For the reasons already explained, allegations of pregnancy discrimination based upon conditions unique to a women's pregnancy, such as the need for IVF treatment, will sound in Title VII as sex discrimination.

Defendant additionally makes a two-sentence argument, bereft of any authority in support, that Plaintiff has not established the remaining elements of a prima facie case of pregnancy discrimination. [*See* Doc. 10-1 at 16.] But an

_____

[16] *LaPorta*, meanwhile, relies entirely on *Krauel*. *See LaPorta*, 163 F. Supp. 2d at 770.

employment discrimination plaintiff does not need to plead facts specifically establishing every element of prima face case for such claims to survive a motion to dismiss, just plausibly allege that she was discriminated based upon a protected characteristic. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002); *see also Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x. 935, 937 (11th Cir. 2011) ("A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss.") (citations omitted).

Regardless, under *Jones*, Plaintiff has alleged enough to plausibly suggest intentional, pregnancy-related discrimination. Specifically, she has alleged that she has a pregnancy-related infertility requiring IVF; soon after Defendant found out about her condition and discovered that she needed leave to treat it, it decided to fire her; that it fabricated issues to justify the termination decision; and that similarly situated non-female employees were treated better than she was. Under *Jones*, these allegations are sufficient to plausibly suggest intentional discrimination on the basis of a pregnancy-related condition, which is enough to

state a pregnancy-related discrimination claim under Title VII. *See* 2022 WL 4462036, at *2.[17]

Accordingly, Defendant's motion to dismiss Plaintiff's pregnancy-related Title VII sex discrimination claim should be **DENIED**.

### 3. Plaintiff's Remaining Gender-Based Discrimination Claim

Defendant next argues that Plaintiff's gender-based Title VII discrimination claim in Count IV is subject to dismissal, in part because Plaintiff fails to support the claim with anything other than conclusory allegations setting forth the bare-boned elements. [Doc. 10-1 at 18-19.] In response, Plaintiff simply points to all the facts that support her pregnancy-related Title VII discrimination claim. [*See* Doc. 14 at 15-16 ("Plaintiff was quickly fired after telling her employer that she wanted to become pregnant. . . . Defendant terminated her or treated her differently because of her gender or she sought in vitro fertilization, which only women can do . . . .").] Based upon this, the Court can only conclude that Plaintiff has no other factual allegations to offer in support of a Title VII gender discrimination claim

---

[17] Notably, *Jones* involved the potentially higher causation standard of the ADA—"solely by reason of"—and yet still found similarly generalized allegations sufficient to state a claim for intentional discrimination. 2022 WL 4462036, at *1-2.

other than those pertaining to her infertility, need for IVF treatment, and/or pregnancy. As a result, the gender-based discrimination claim in Count IV is redundant of the pregnancy-based claim in Count III, and subject to dismissal. *See Monsrud*, 2020 WL 12654451, at *2 n.1; *Johnson v. Gold Nugget, Inc.*, 2012 WL 2609432, at *2. Defendant's motion should therefore be **GRANTED** as to this claim.[18]

### E. FMLA Interference

In its penultimate argument, Defendant contends that Plaintiff's FMLA interference claim should be dismissed. First, it argues the allegations in the amended complaint fail to demonstrate that Plaintiff was entitled to FMLA benefits, since she admitted, in her EEOC charge, that she was able to perform the essential functions of her job without traveling. [Doc. 10-1 at 19-23.] Defendant also contends that this assertion undermines her allegation that Defendant had any reason to know that her condition was FMLA-qualifying, since the amended complaint does not provide specific details about her request for leave to receive IVF treatment. [*Id.*] While Defendant cites ample authority its general discussion

---

[18] Because the undersigned recommends dismissal on these grounds, I do not address Defendant's further contention that Plaintiff's gender-based claim is untimely because it does not relate back to the original complaint.

of how to make out a claim for FMLA interference [*see id.* at 19-21],[19] it cites none

in support of its argument for why Plaintiff's particular allegations fail to state a

plausible claim [*see id.* at 22-23.]

    "To state a claim of [FMLA] interference, the employee must allege that

[s]he was entitled to a benefit under the FMLA and was denied that benefit."

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (citing

*Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-07

(11th Cir. 2001)).  To establish the right to take FMLA leave, meanwhile, an

employee must suffer from a "serious health condition" that makes her "unable to

perform the functions of her position."  *Id.* at 1194.  Defendant contends that

Plaintiff's statement in her EEOC charge that she was able to perform the essential

elements of her job without traveling forecloses her from asserting that she was

unable to perform the functions of her position because of a serious health condition.

The Court disagrees.

---

[19] The cases Defendant does cite were all decided at summary judgment, and therefore do not address the pleading requirements for an FMLA interference claim.  *See Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233 (11th Cir. 2021); *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048 (11th Cir. 2020); *Munoz*, 981 F.3d 1265; *Gay v. Gilman Paper Co.*, 125 F.3d 1432 (11th Cir. 1997); *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188 (11th Cir. 2015).

Under the FMLA, "[t]he term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Based upon this definition, courts have not required that FMLA plaintiffs plead their "serious health conditions" with the sort of heightened particularity Defendant suggests. Instead, health problems as minor as being sick for an unspecified amount of time with a "fever, cough, shakes, and loss of appetite" or being "incapacitated" by pregnancy complications have been found to be sufficient at the pleading stage. *Borgella v. Robins & Morton Corp.*, No. 1:21-CV-22789-JLK, 2022 WL 2104215, at *4 (S.D. Fla. June 10, 2022) (fever); *Shadduck v. City of Arcadia, Fla.*, No. 2:21-CV-741-JES-NPM, 2022 WL 45052, at *1, *4 (M.D. Fla. Jan. 5, 2022) (pregnancy complications). In this case, Plaintiff has alleged that she needed to go on short-term disability leave, or its equivalent, in order to receive the necessary IVF treatment. That alleged need for leave, in turn, plausibly suggests that she would be incapacitated for at least a number of days; and she separately alleges that she requires ongoing treatment, up to five times a week.[20] While it is a somewhat close

---

[20] Even if Plaintiff was required to plead more specific allegations, the applicable regulations explain that continuing treatment by a healthcare provider includes "any period of incapacity due to pregnancy, or for prenatal care," as well

call, in the end, the undersigned finds that Plaintiff has plausibly alleged she suffered from a serious health condition, and "[a]ny argument regarding the seriousness of [plaintiff's particular] symptoms may be raised at summary judgment or trial." *Borgella*, 2022 WL 2104215, at *4.

The undersigned also rejects Defendant's argument that Plaintiff cannot now allege that she was unable to perform her job functions. Plaintiff plausibly asserts in her amended complaint that it was only after her travel restriction was implemented—that is, only after she was initially accommodated—that she realized that, in addition to that travel accommodation, her IVF treatment required that she actually take a leave of absence, which is when she requested that she be allowed to take short-term disability leave. [Doc. 7 ¶¶ 26, 31.] In other words, Plaintiff's complaint plausibly suggests that while she initially believed that she could perform the functions of her job, she ultimately concluded that she could not

---

as any three-day period of incapacity due to a condition that is then followed by "[t]reatment by a healthcare provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the healthcare provider." 29 C.F.R. § 825.115(a)(2), (b). Plaintiff's allegations plausibly suggest that her infertility, requiring IVF treatment, would have required leave and ongoing monitoring appointments, plausibly suggesting that her treatment regimen would have resulted in the required incapacity and ongoing treatment under the applicable regulations.

perform her job and simultaneously obtain the IVF treatment required by her infertility. Thus, her statement in her EEOC charge that she could perform the essential functions of her job with a travel accommodation is not necessarily incompatible with her allegation in the amended complaint that she realized, in the end, that she could not perform her job functions and still obtain the necessary IVF treatment without a leave of absence. Accordingly, Defendant's argument to the contrary fails.

Lastly, Defendant's contention that Plaintiff cannot show that she was entitled to benefits because her complaint does not include "<u>any</u> facts supporting" that she provided Defendant with the requisite notice," is essentially a summary judgment argument without factual or legal support at this juncture.[21] [Doc. 10-1 at 22.] While it is true that an employee must give notice of intent to take FMLA-qualifying leave, the requirements for notice vary depending on whether the need for leave was "foreseeable" or "unforeseeable." *Gay*, 125 F.3d at 1434. When the need for leave is unforeseeable, it need only be provided "as soon as practicable under the facts and circumstances of the particular case." 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. §§ 825.302(a), 825.303(a). Here, by alleging that she

---

[21] Indeed, Plaintiff cites no authority decided on a motion to dismiss.

initially thought she could obtain IVF treatment with a mere travel restriction, but only afterward realized that she needed a full leave of absence, Plaintiff has plausibly alleged that her need for leave was unforeseeable[22]; and with Plaintiff's amended complaint set out in roughly chronological order, it is apparent in context that Plaintiff made the request for leave sometime in the short period between when she realized she needed it in late June 2021, and when she was fired on July 7, 2021. [Doc. 7 at ¶¶ 22-34.] *See Cave v. Kaiser Found. Health Plan of Ga., Inc.*, No. 1:07-CV-02794-GGB, 2009 WL 10701976, at *8 (N.D. Ga. Aug. 5, 2009) (assuming that one week delay in notifying employer following injury was sufficiently soon); *see also Brown v. Metro Corral Partners, LLC*, No. 1:17-CV-1054-TCB-WEJ, 2017 WL 10752792 (N.D. Ga. Sept. 21, 2017) (finding unadorned allegations that plaintiff notified employer of carpal tunnel syndrome and need for "several days off" leave at some unidentified time after seeing doctor to suffice for notice purposes), *report and recommendation adopted*, No. 2018 WL

---

[22] The need for leave is not foreseeable when there is a "lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency." 29 C.F.R. § 825.302(a). Plaintiff has plausibly alleged that she lacked knowledge about if and when she would need to take a leave of absence for IVF treatment; alternatively, Plaintiff has plausibly alleged that her circumstances changed when she was informed that her IVF treatment would require leave.

7079994 (N.D. Ga. Mar. 8, 2018); *id.*, Doc. Entry 1 (Compl.), ¶¶ 89-91. As a result, she has plausibly alleged that she provided notice within a practicable period of time after discovering her need for it.

In terms of the content of the notice, as a general rule, an employee need not explicitly mention the FMLA when giving notice to her employer, *see Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA."), and when the need for leave is unforeseeable, an employee need only "provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request," 29 C.F.R. § 825.303(b); *see also Cruz*, 428 F.3d at 1382 ("[W]here an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason."). Defendant does not explain why the content of Plaintiff's alleged notice her is insufficient,[23] but regardless, similar allegations—requesting a leave of absence in relation to difficulties with pregnancy—have been upheld against motions to dismiss. *See Alger v. Prime Rest. Mgmt., LLC*, No. 1:15-CV-567-WSD, 2016 WL

---

[23] Other than the say she has not alleged "any facts."

38

3741984, at *6 (N.D. Ga. July 13, 2016) (allegation that plaintiff informed manager of "severe complications" to pregnancy and need for two weeks off sufficient); *Labrousse v. Caribbean Airlmail, Inc.*, No. 09-23529-CIV, 2010 WL 11505138, at *1 (S.D. Fla. Apr. 19, 2010) (notice of "high risk" pregnancy along with request for one-month leave was sufficient). As a result, Plaintiff has plausibly alleged that she provided adequate notice under the circumstances of the case.

Accordingly, Defendant's request to dismiss Plaintiff's FMLA interference claim should be **DENIED**.

### F. FMLA Retaliation

In its final motion to dismiss argument, Defendant contends that, in FMLA retaliation cases "involving a corporate defendant, the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the adverse action." [Doc. 10-1 at 23 (citing *Aponte v. Brown and Brown of Fla., Inc.*, 806 F. App'x 824, 830 (11th Cir. 2020) and *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).] Because Plaintiff's amended complaint does not specifically identify the individual who made the decision to fire her, or to whom she made her request for leave, Defendant argues that she fails to meet the

foregoing requirement. [*Id.* at 23.]

Once again, Plaintiff's citations are to summary judgment cases, and as a result, they do not explicate the pleading requirements for Plaintiff's claim. *See Aponte*, 806 F. App'x 824; *Strickland*, 239 F.3d 1199; *Brungart, Inc.*, 231 F.3d 791. And not to belabor the point, but from the mere fact that at summary judgment, "unrebutted evidence that a decisionmaker was unaware of the protected activity" will undermine causation based upon temporal proximity alone, it does not follow that a plaintiff must affirmatively plead who the decisionmaker was and how they were specifically aware of the plaintiff's protected activity. *See Haugdahl v. Fla. Dep't of Agric. & Consumer Servs.*, No. 4:19CV87-MW/MJF, 2019 WL 13199586, at *3 (N.D. Fla. Sept. 30, 2019) (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234-35 (11th Cir. 2010)); *see also Irby v. Evonik Corp.*, No. 1:20-CV-337-TFM-M, 2021 WL 6050434, at *6 (S.D. Ala. Mar. 23, 2021) (agreeing with plaintiff that decisionmaker knowledge requirement was one for summary judgment and finding that general allegations that supervisors were aware of condition and need for leave sufficient when one of the supervisors was decisionmaker); *cf. Fowler v. D.C.*, No. CV 18-634 (RDM), 2021 WL 4206591, at *9 (D.D.C. Sept. 16, 2021) ("Contrary to Defendants' suggestion, a plaintiff is not required to allege that a specific

40

supervisor had knowledge of the protected activity to plead an FMLA retaliation claim. . . .  At the motion to dismiss stage, it is sufficient for a plaintiff to allege facts supporting a plausible inference of causation") (citing *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 28-29 (D.D.C. 2013) and *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 318 (D.D.C. 2015)).

Here, Plaintiff has plausibly alleged that she informed her supervisors of her condition, her need for IVF, and her request for leave.  Under the foregoing authority, this is sufficient to establish Defendant's awareness at this stage in the proceedings; and without more persuasive authority from Defendant, the undersigned will not graft a new pleading requirement onto claims for FMLA retaliation.  Defendant's request to dismiss Plaintiff's claim should therefore be **DENIED**.

## III.   CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's amended complaint be **GRANTED IN PART AND DENIED IN PART**.  [Doc. 10.]  Defendant's motion to dismiss should be **GRANTED** with regard to Plaintiff's gender-based Title VII sex discrimination claim in Count IV, but **DENIED** with regard to her remaining claims.

IT IS SO RECOMMENDED this 11th day of October, 2022.

_____
JOHN K. LARKINS III
United States Magistrate Judge